Appeal No. 20-1200. We'll first hear from Ms. Chun. Ms. Chun? Good morning, Your Honors. May it please the Court, I'm Lisa Chun, and I'm presenting this The issue in this case is whether 1252G bars jurisdiction of E. F. L.'s habeas petition. District Court held that there was no jurisdiction. And I think the parties are in agreement that if E. F. L. is presenting a legal challenge, that jurisdiction remains. And if she's challenging a discretionary decision, then there is no jurisdiction. E. F. L. is arguing that she is challenging a legal decision. And that's supported by this Court's case law regarding the subhon exception that she mentions in the briefs. In addition, a narrow reading of 1252G is supported by this Court's decision in Fornal Act v. Perryman as well. And then if 1252G is read to preclude any sort of jurisdiction, she's argued that the suspension clause provides alternate jurisdiction. Ms. Chun, could I ask you to tell us what E. F. L.'s current status is in various respects? This has been a lot of moving parts over the course of this litigation. Yes, Your Honor. So E. F. L. she was released from detention in April. She was part of the Freyhut subclass member and showed that she was medically vulnerable due to COVID. So she is on an order of supervision. She does have to report regularly to ICE. And then in June, I mean, I'm sorry, in July, her VAWA petition was actually approved. And then on October 21st, she submitted a adjustment of status application to USCIS along with her waivers. And that is applying for waivers of inadmissibility? Yes, Your Honor. She applied. She filed an I-601 and an I-212. I don't know what those are. Yes, Your Honor. It is to waive her grounds of inadmissibility. Okay. She has applied for that. And she was, as I understand it, CIS also denied her deferred action. Is that right? So they have not granted her deferred action. That is correct, Your Honor. Have they affirmatively denied it or just not acting on it? It was never anything that EFL requested. In regards to the automatic work permit, though, she did request it. And USCIS told her that she would have to file an application, which she did along with her adjustment of status and waiver application. Okay. Can I ask you, Ms. Chern, to address the question that the government has raised? And that is, how is the relief that you're seeking, how does it fit in with habeas corpus in general? Ordinarily, we think about that as release from custody. And it looks like what you're seeking is an injunction against removal. Well, Your Honor, formally, the pyramid, the court. I know. Yes, I know. So she speaking more generally, just in terms of Supreme Court jurisprudence, how is this habeas corpus? Yes. So in St. Cyr, that was also a habeas petition, and it dealt with a legal challenge to discretionary relief. She is considered in custody, we believe, under this court's precedent that she's on a conditional release. So she is in danger of being deported. That would not change if relief were granted. Her being in custody? Yes. Well, essentially, her legal argument is that she is eligible to file for adjustment of status. If she is physically removed from the U.S., she is no longer eligible for that statutory relief. And so this court has held that's a legal question. In the context of it being someone with a removal order who is in danger of being deported. That has been the that habeas has been the mechanism by which to challenge that. Let's just call it right. It's not good. It's only to stall it because it's a valid order. Yes, Your Honor, we're asking that she be given the meaningful opportunity to pursue her adjustment of status application at this point. And she is under the threat of deportation. So that is where the habeas relief would come into play. So the habeas is just a method of stalling it. In order. Yes, Your Honor. In order to pursue her statutory relief. We do have a kind of weird conflict. And Miss Tracy, I want to ask you about this when your time comes up. We do seem to kind of have different branches or different offices in the executive branch going in opposite directions with CIS saying she's entitled to relief under the Violence Against Women Act. And DHS saying get her out of here. And it's a I mean, that was the kind of conflict that at least a similar conflict that led us to grant relief informally to try to at least get a reasonably consistent set of decisions out of the executive branch. Yes, I agree with that, Your Honor, and that was also something that this court has pointed out in CEDA v Mukasey where two branches are seemingly doing two inconsistent things. And so, again, it's more akin to a legal challenge versus just pure challenge of discretion. Miss John, do you have any thoughts on the 20HA letter that was submitted by Miss Tracy from the Third Circuit? Yes, Your Honor. I believe that was TAZU the AG United States. In TAZU, the petitioner had a separate petition for review pending a denial of the motion to reopen. And so it's quite different in this EFL circumstance where she could not have raised any of these VAWA claims in her petition for review because it was she could only raise withholding only. So she could only raise her fear of returning to her home country. And so it was very those that distinguishes her case from TAZU. And in addition, the relief TAZU was seeking was a provisional waiver. And so these provisional waivers allows an applicant to ask for their inadmissibility to be waived. However, eventually, they do have to go to a U.S. consulate abroad and apply for an immigrant visa abroad. So that is the that's very different from an adjustment of status application where, you know, by definition, you have to be present in the U.S. to apply for adjustment of status, which is, again, where this legal versus discretionary dichotomy comes into play. Because if she's removed, she cannot she can no longer apply for adjustment of status by definition. So we think TAZU is distinguishable on those grounds. And the habeas petition was duplicative because it was another petition for review pending in the Second Circuit. I ask you, Ms. Chun, this may not be quite as pressing now as it was at earlier stages of this case. But as I understand it, your position throughout this case has been, in essence, because EFL was, you said, eligible and the government had not yet decided whether she would get relief under the Violence Against Women Act, that she had a legal right to delay execution of the removal. My question is, when do you think, under your theory, removal was prohibited? Is it upon the first application? Is it upon preliminary approval? Is it upon final approval of the Violence Against Women Act application? Well, there were two issues. So I think it just depends on the meaningful opportunity to present her relief. So if she has reached the end of that point and she is denied that relief, then there's nothing else. There's no legal right to relief preventing her from being removed. But under that theory, if a person who is subject to a removal order files a petition or an application for relief under the Violence Against Women Act, the filing of that application in your legal view bars execution of the removal order. Is that right? Yes, Your Honor. And that's a pretty extraordinary position. That I get an automatic stay of an otherwise final valid removal order by filing that application. I think that Congress intended for VAWA to be a special type of relief. Where do we get that in the statute? I'm sorry, Your Honor? Where do we get that conclusion from the statute? Well, she is eligible for adjustment of status. So there are some people who have a final order of removal who aren't eligible for adjustment of status. If they're not eligible for adjustment of status, then there's nothing preventing that removal order from being executed. But if you are eligible for adjustment of status, then I do believe that it should prevent deportation. So let me just go ahead and ask my slippery slope question. The Violence Against Women Act obviously can protect anybody who's subject to a removal order. Anybody can come forward with new allegations of abuse or eligibility for relief under that statute. Why would we not expect vast numbers of VAWA applications if we accept your view and people in the EFL situation get an automatic stay of removal until the government has finally resolved those claims? I do think there needs to be some sort of prima facie finding. So if it's a frivolous petition and application, there is a prima facie mechanism in VAWA where USCIS will make a prima facie finding. And she reached that hurdle. So it's not the mere application that entitles a person in her position to that right, but it's the prima facie finding? I would say yes, in that it shouldn't be abused. It shouldn't be a frivolous application filed just to prevent removal. There should be some way that it has to be a bona fide and legitimate claim. In order to qualify for VAWA, you do have to show good moral character, which within the past three years of application, you have to show that you entered into a good faith marriage with the abuser. So there are factors in the adjudication of the VAWA self-petition that also would prevent the floodgates from opening. Well, I'm less confident of that. If we were to agree with you that there is a legal right to a stay of removal. I would just say that, you know, either they have a need of prima facie showing and that it's a legitimate non-frivolous application that they have submitted. Ms. Chung, would that prima facie showing be explicit in the filing for the stay? Or just the filing and you're expecting a hearing later to produce the evidence of a prima facie case? The way that USCIS does it is that once you file the petition, they turn around and they do make the prima facie determination. And just some background, some of that is because someone who's made a prima facie showing as a VAWA self-petitioner, they're entitled to other types of benefits. So they're entitled to certain benefits that other undocumented immigrants are not eligible for. So, for instance, EFL, she qualified for certain medical assistance that normally wouldn't be available to undocumented immigrants. So the prima facie finding that USCIS, they already have a mechanism where they're making that finding and giving those immigrants certain benefits that others aren't eligible for. Thank you. I see that my time is up. Well, we've asked a fair amount of questions. So you may have two minutes for rebuttal, Ms. Chung. Thank you, Your Honor. All right, we'll now turn to and hear from Ms. Tracy. Thank you, Your Honor. May it please the court, Ms. Chung. You should affirm the district court's holding that it lacks jurisdiction over a habeas petition that sought to enjoin the execution of a lawfully reinstated removal order. The habeas petition was filed just days after this court dismissed two consolidated petitions for review. And the petition did not seek a simple release from custody, but rather sought the court's intervention into DHS's decision to move forward with executing that lawful order. Such intervention is barred by the plain text of 8 U.S.C. 1252G, as this court has previously recognized in the Sharif v. Ashraf case from 2002. And more recently, in the Tazu v. Attorney General case in the Third Circuit, where 1252G was found to strip the court of jurisdiction over a habeas petition, where, as here, a foreign national filed a habeas petition in an attempt to challenge the timing of their removal. And before I address the challenges that petitioner brings in an attempt to avoid this jurisdictional bar, I wanted to step back for a moment and highlight the fact that, in this case, we're not dealing with a petitioner who simply has an order of removal. It's a reinstated order of removal. And the reason why that's significant is because the universe of options that are available to an individual with a reinstated order of removal for them to remain in the United States is very narrow. It's quite limited. In fact, by statute, under 8 U.S.C. 1235, pardon me, 8 U.S.C. 1231A5, they shall not receive any relief, meaning that petitioner is, in fact, ineligible for the adjustment of status that she's stating now that she seeks. There are certain narrow exceptions to that bar on relief. For example, due to international agreements we have and other statutory and regulatory frameworks that we have, we do not return an individual to a country where they will face danger or harm. So in this case, petitioner had initially pursued withholding of removal. That's one such exception to that bar to relief. And again, I think it's important to step back and look at the timeline here. This individual petitioner had her order reinstated in March of 2018. She did raise that claim of fear of returning to her home country and was given the opportunity to raise that claim before the immigration judge. It was unsuccessful. She was represented by counsel when she brought that claim. She then appealed the denial of her withholding and CAC claim to the Board of Immigration Appeals, which upheld the judge's decision and then, as the court knows, brought petition for review of that decision before this court. And it was only before that petition for review was before this court that petitioner filed this I-360 Violence Against Women Act petition in August of 2019. That was approximately a year and a half after she was already facing that reinstated order of removal. The reason I want to highlight that is that petitioner states she could not have brought this claim previously. And that's true, but only because of the timing in which she filed this I-360 petition. While counsel's correct that an immigration judge has no jurisdiction over an I-360 petition itself, that would be the jurisdiction of USCIS, it is not at all uncommon for an individual in immigration proceedings to file a visa petition, more commonly the I-130 petition for alien relative, which is the analog for the I-360 self-petition. So it's not at all unusual, and there was nothing legally that precluded petitioner from doing that. And she could have requested an extension or a continuance of her hearings from the immigration judge until such time as that petition was approved. Again, that's done commonly within the I-130 context, as petitioner acknowledges inciting the SUPON line of cases, where oftentimes that's precisely what individuals are doing. Ms. Tracy, could I ask you, how does the bar in 1231A-5 apply to somebody who is seeking relief under the Violence Against Women Act? So for a self-petitioner, such as the petitioner here, so how it applies, and I know Your Honor had a question about the conflict between CIS and DHS here or and ICE here, and there actually is not a conflict, Your Honor, because an approved I-360 petition is not in fact a grant of relief. What it is, Your Honor, is a visa classification. It grants a visa classification demonstrating that individual is an immediate relative of a U.S. citizen, an abused spouse of a U.S. citizen. And that visa classification provides an individual with a basis to pursue a green card. So the approved I-360, Your Honor, is not a green card in and of itself. It just establishes that relationship where an individual can pursue a green card. Okay, that's helpful, but how does that apply to somebody who's facing a bar in 1231A-5, if I'm remembering that correctly, with the reinstated removal order? Right, so she cannot pursue adjustment of status in the United States because of that bar, Your Honor. What she can do is she can pursue an immigrant visa or pursue her green card outside of the United States. However, she needs to secure waivers of admissibility that are discretionary waivers in her home country. But in the United States, she cannot pursue the adjustment of status because of that bar at 1231A-5. So 1231A-5 bars her from seeking this relief in the United States? I understand you say nobody has jurisdiction here, but I just want to understand that it would allow her or at least would not prohibit her from seeking discretionary relief from Mexico through the consulate. That's correct. Because when we talk about relief, it's relief from removal, Your Honor. So at 1231A-5, somebody with a reinstated order is generally is barred from relief. However, that does not apply when she's outside of the country. Does it make a difference if the circumstances of the, help me out here, but if the circumstances that led to the reinstate of the order of removal, in essence, are closely related to the abuse and the abusive relationship? I'm not sure if that question is clear, but here we had ELF reentering in connection with her husband, if I remember correctly, or his direction. Correct, Your Honor. So that it would be relevant if she was simply subject to an order of removal. However, the government's position is once that order of removal has been reinstated, that bar at 231A-5 comes into effect. So had she not had that order reinstated in March of 2018, it would be relevant and it would provide her for a basis to pursue a waiver. Thank you. May I continue? Please. Petitioner raises two separate arguments to try to avoid the jurisdictional bar at 1252G. The first challenge is under the Administrative Procedure Act, where a petitioner argues that her removal during the pendency of her I-360 VAWA petition is an abuse of discretion. However, that challenge under the APA fails, as Judge Seeger noted, because it both attacks a discretionary decision by DHS and a decision for which judicial review is precluded by statute. So here both carve-outs in the APA apply, and it cannot be relied upon to establish jurisdiction. The second major argument that petitioner raises is an argument that it's a violation of due process to execute the order while her I-360 petition was pending. But that argument fails for several reasons. First, as I explained, even if it's approved, the VAWA self-petition, and even now that it has been approved, the VAWA self-petition in and of itself does not confer relief, it does not bar her removal, and it does not confer her an immigration status. An approved I-360 provides a visa classification as an immediate relative, which allows for the basis to pursue a green card. Petitioners also argued that the work authorization that's issued incident to an approved I-360 is relief. That's not correct. Work authorization is just as it sounds. It's a permission to work while an individual is inside the United States. It is not an immigration status. And there's nothing about work authorization that precludes DHS from moving forward with removal. It is actually a benefit that an individual receives. Further, 8 U.S.C. 1231A5 makes clear that aliens with reinstated orders of removal are not eligible for relief. There are very limited exceptions and avenues to remain in the United States, including withholding of removal that petitioner has already pursued. Here, in this case, petitioners exhausted the opportunities that Congress gave her to challenge her removal. She's been afforded due process in fully pursuing her withholding claim and availing herself of the right to seek the court's review of the immigration judge's decision denying her protection from removal. And petitioner fails to point to any statutory or regulatory authority mandating that her reinstated removal order be stayed so she could pursue her vow of self-petition. And even if the court had granted the habeas writ, well, it would have no effect on her ability to remain in the United States because even now that the petition has been approved, it does not confer relief. It does not provide a status that would preclude DHS from moving forward with her removal. And had she been removed from the United States during the pendency of her I-360 petition, the adjudication of that petition would still have moved forward. So it would not have precluded her from receiving a decision on her petition. Finally, with regard to petitioner's suspension clause argument, her argument that the jurisdiction stripping provisions of 1252G violate the suspension clause as applied to her case was forfeited below. The argument was not developed in any meaningful way before the district court either in briefings or in a lengthy oral argument before the court, the core issue of which was the court's jurisdiction in the case. But even if the suspension clause argument is not deemed forfeited, 1252G does not violate the suspension clause in this case. This is not a traditional habeas where an individual is seeking release. So it cannot be said to be a violation of the writ as it existed in 1789. The common law writ could not have granted EFL's requested relief. So the suspension clause is not triggered in this case. But even if the suspension clause were implicated, petitioner availed herself of the constitutionally sufficient alternative to habeas review in her prior petitions for review before this court. Petitioner's suspension clause arguments are without merit, regardless of whether they were forfeited. Ms. Tracy, can I, maybe I'm still confused, but can you explain to me what effect 1231A5 has on this issue about ELF's eligibility for waiver of inadmissibility? Is it geography? She can apply from abroad, but not from within the United States? Or is it something different? So 1231A5 precludes relief. And as the government understands the statute, that means relief from removal from the United States. That's that's my understanding, Judge. However, once she's outside of the United States, that reinstated that order has already been reinstated. She is now outside of the United States. So to the 1231A5 bar no longer applies. And then so, however slim the chances might be, she's legally eligible to pursue that waiver from a consulate in Mexico. That's correct. Okay. Thank you. And, Your Honor, if there's no further questions, we would ask that you affirm the district court's decision in this case. All right. Thank you, Ms. Tracy. Ms. Chun? Thank you, Your Honors. Just the questions surrounding 1231A5 I think just reinforces and illuminates the point that she's making a legal challenge. So it's not necessarily discretionary. It's whether or not she is eligible. We have argued that she is eligible because of the amendments made to VAWA in 2005 under Section 813B. And under that amendment that Congress made, that she is eligible for a waiver even with a reinstated order of removal. And she is eligible while applying for adjustment of status. And there are regulations that we cite to. It's 8 CFR 212.2 that state that these sorts of waivers are available when filed concurrently with the adjustment of status application. And just for the timing of her having brought up the VAWA, part of her petition for review was that her prior counsel was ineffective. So the prior attorney who represented her before the immigration judge and before the board, and that was one of her arguments, was that that attorney was ineffective because the attorney did not explore all types of relief. So the timing was because of her prior attorney not identifying that relief for her. The other thing about an I-360 only being a visa classification, also under Section 814B of VAWA 2005, we argue that for VAWA self-petitioners, it's different. It does entitle them to automatic work authorization, which under DHS v. University of Regents, the Supreme Court did recognize that work authorization is affirmative relief. So, again, her situation is different from other people because of her status as an abused immigrant spouse and qualification under VAWA. Thank you, Ms. Chung. Thank you, Ms. Tracy. The case is taken under advisement.